IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| JUSTIN R. MITCHELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:16CV1352 |
| | ) | |
| BARRY ROUNTREE, et al., | ) | |
| | ) | |
| Defendants. | ) | |

MEMORANDUM OPINION AND ORDER AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

This § 1983 action comes before the Court on a Motion for Summary Judgment [Doc. #67] filed by Defendants Barry Rountree, P.T. Watkins, H. Bowen, J.M. Tuttle, and B.A. George, all of whom are employees of the Winston-Salem Police Department. In addition, Plaintiff Justin Randolph Mitchell, who is proceeding *pro se*, has filed a Motion [Doc. #92] to impose sanctions against Defendants for providing false statements. For the reasons set out below, Plaintiff's Motion will be denied, and the Court will recommend that Defendants' Motion for Summary Judgment be granted and that this case be dismissed.

I.  FACTS, CLAIMS, AND PROCEDURAL HISTORY

Plaintiff brings claims under 42 U.S.C. § 1983 for deliberate indifference, excessive force, and "being deprived of my Constitutional Rights," and also brings a claim under state law for assault and battery, all arising out of "the process of me being taken into custody by Winston-Salem Detectives/SWAT members" on May 17, 2016. (Amended Complaint [Doc. #26] at 1.)[1]

---

[1] All pages numbers for Plaintiff's filings refer to the Court's ECF page number.

According to the Amended Complaint, on May 12, 2016, four detectives were trying to locate Plaintiff and attempted to search Plaintiff's father's residence but were denied permission. On May 16, 2016, two detectives questioned Plaintiff at his place of business and requested permission to search his girlfriend's car, but were denied permission. Plaintiff accompanied the detectives to the police station where he was questioned. Plaintiff contends that officers confiscated his cell phone and denied his request to speak to a lawyer. (Id. at 5-6.) Plaintiff was allowed to leave, but the next day, on May 17, 2016, Plaintiff saw detectives around his girlfriend's apartment, assumed that they were coming to arrest him, and decided to hide in the ceiling of his girlfriend's apartment. Officers approached the apartment, and while the officers were present, Plaintiff fell through the ceiling, striking a coffee table below. Plaintiff contends that he was handcuffed, his head was "slammed . . [onto] the kitchen counter," and his requests for medical attention were ignored. (Id. at 6-7.)[2]

---

[2] In addition to claims of excessive force and deliberate indifference, Plaintiff's briefing also asserts that the request to search his father's residence and the request to search his girlfriend's vehicle were illegal. Plaintiff also contends that officers illegally seized his cell phone during the police interview, and that he should have been allowed to have a lawyer present when being questioned by police. (Amended Complaint [Doc. #26] at 5.) These contentions do not appear to be raised as separate claims, since the specific claims raised are for deliberate indifference and excessive force, and Plaintiff agreed in his deposition that his case "was mainly about the failure of the Winston-Salem Police Department to provide medial attention for [him] after [he] fell through the ceiling." (Pl. Dep. [Doc. #68-5] at 3.) The Court nevertheless notes that any attempt by Plaintiff to recover damages based on an alleged unconstitutional conviction, or any attempt to otherwise raise a claim that would render his criminal conviction invalid, would require Plaintiff to first "prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." Heck v. Humphrey, 512 U.S. 477, 486-87 (1994). Plaintiff has not alleged that his conviction has been reversed or set aside. Therefore, any claims by Plaintiff that would challenge the legality of his criminal conviction would be barred by Heck. Further, to the extent Plaintiff challenges the request to search his father's residence or his girlfriend's car, a request for permission to search is not a constitutional violation, and in any event, Plaintiff may not raise a claim on behalf of his father or girlfriend. The Court also notes that with respect to Plaintiff's cell phone, Defendants have produced a copy of Plaintiff's consent to search his cell phone [Doc. #84-1]. Finally, with respect to the questioning of Plaintiff at the police station, "violations of Miranda procedures do not form

In support of their motion for summary judgment, Defendants submit the declarations of Julie Carter, Assistant Risk Manager for the City of Winston-Salem, Defendant George, Defendant Rountree, and Defendant Watkins, along with the deposition testimony of Plaintiff. Defendants explain that the Winston-Salem Police Department was investigating a series of robberies, including an armed robbery that occurred during the morning of May 14, 2016, and that Detective Watkins received an email with images from a security camera and believed that one of the suspects looked liked Plaintiff. (Watkins Aff. [Doc. #68-4] ¶ 4 and Ex. A.) Plaintiff was interviewed on May 16, 2016, and admitted to participating in the robbery. (Id. ¶ 5-6.) Officers obtained a warrant for his arrest. (Id.) The next day, on May 17, 2016, officers attempted to locate Plaintiff to execute the warrant. Having obtained information that Plaintiff was at the apartment of his girlfriend, officers conducted surveillance of the apartment complex, and Detectives Watkins and Bowen walked up the stairs to the second floor apartment which opened to an outside walkway with a railing. (Watkins Aff. ¶¶ 8-9; Mitchell Dep. [Doc. #68-5] at 15-16, 32.) Plaintiff looked out the apartment window and recognized unmarked Winston-Salem police cars and detectives approaching the apartment. Plaintiff assumed that the officers were coming to arrest him, and he went into a child's bedroom and climbed into the attic to hide. (Watkins Aff. ¶¶ 8-9; Mitchell Dep. at 15-17.) Detectives

---

the basis of a § 1983 claim for damages." Erwin v. Rodriguez, 1:17cv103, 2017 WL 4052167, at *2 (W.D.N.C. Sept. 13, 2017) ("[C]oercive or uncounseled questioning by law enforcement officers does not amount to a freestanding constitutional violation needed to support a § 1983 claim. It is not until statements obtained in violation of Miranda safeguards are used against a defendant at trial, that a violation of the Self-incrimination Clause occurs.") (citing Chavez v. Martin, 538 U.S. 760, 770, 772, (2003); Burrell v. Virginia, 395 F.3d 508, 513-14 (2005)). Therefore, to the extent Plaintiff may be attempting to assert other claims based on these various contentions, those claims would fail.

Watkins and Bowen knocked, and receiving no answer started to walk away, when a woman identifying herself as Sylvia Davis, Plaintiff's girlfriend, opened the door and advised officers that Plaintiff was not at the residence. She allowed detectives to look inside. (Watkins Aff. ¶¶ 9-10.) Detective Bowen remained near the doorway and Detective Watkins entered the living room. (Id. ¶ 10.) Plaintiff, hiding in the ceiling, was aware of the detectives' presence in the apartment. (Pl. Dep. at 22.) The ceiling began to crack, and the detectives heard noises. Detective Bowen shouted: "He's in the ceiling. He's in the ceiling." (Watkins Aff. ¶ 10; Pl. Dep. at 22.) A large section of the ceiling, together with insulation, fell to the floor, and Plaintiff fell from the ceiling, hitting a coffee table and then the floor. (Watkins Aff. ¶ 10; Pl. Dep. at 22-23.) The detectives drew their guns and re-holstered them after Plaintiff's hands were visible. The detectives instructed Plaintiff to get on the ground. When Plaintiff refused to comply, Detective Watkins reached for his taser. (Pl. Dep. at 28-29, 31, 33; Watkins Aff. ¶ 10; George Aff. [Doc. #68-2] ¶ 7). Officer George arrived at the apartment and also instructed Plaintiff to get on the ground. Plaintiff then put his hands up and knelt as if complying with the order but then stood up and started for the door in what officers believed was an attempt to leave the apartment, which opened to the outside and not an interior hallway. (Pl. Dep. at 29, 31, 33-4; Watkins Aff. ¶ 10; George Aff. ¶ 8.) Plaintiff testified that he made it to the doorway of the apartment when Officer George grabbed him and pushed him, head first, to the ground. Plaintiff's right arm was pinned underneath his body with officers on top instructing him not to resist and to give officers his arm to be cuffed. According to Plaintiff, officers were hitting him in the back of the head with their hands. (Pl. Dep. at 29, 31-39.)

-4-

Plaintiff testified that the officers believed he was resisting because he was unable to give them his right arm because it was pinned underneath him. (Id. at 34-36.) Plaintiff was eventually handcuffed, lifted from the floor, and was escorted toward the door of the apartment by Detective Watkins, who was walking alongside a kitchen counter. (Mitchell Dep. at 29, 30, 36; Watkins Aff. ¶¶ 11-12.) According to Plaintiff, he "snatched away" from Detective Watkins, and Officer George apprehended him. According to Plaintiff, Officer George tried to slam Plaintiff's head on the nearby counter while Plaintiff continued to resist, and while Plaintiff was resisting Officer George tried again and succeeded in slamming Plaintiff's head onto the counter and holding him there. (Pl. Dep. at 30, 39-41.) Plaintiff testified that immediately after he fell from the ceiling, he told them he wanted "medical attention" and that he was "hurting." (Id. at 36, 43, 52-53.) Plaintiff also contends that he told officers he had asthma and was having difficulty breathing due to the loose insulation. (Id. at 41.) After officers regained control over Plaintiff, he was escorted outside the apartment and down the stairs into a police car. (Id. at 42-43, 51-55.) Plaintiff testified that he was not screaming in pain when he was taken to the patrol car for transport to jail, and he was able to squat down and stand up and walk with no trouble. (Id. at 51-60.) Plaintiff agreed that someone looking at him would not know he had serious medical needs. (Id. at 60.) Plaintiff testified that while he was in the parking lot of the apartment complex, waiting to be transported to the Magistrate's Office at the Forsyth County Detention Center for booking, he was not screaming in pain but was "coughing real bad" due to breathing insulation from the attic. Plaintiff states that he requested a patrol officer take him to the hospital, and the patrol officer responded that he

would take him to the Detention Center per instructions. (Id. at 52-55.) Plaintiff explained that he did not bother to complain about an injury to his back while in the patrol car because he had already requested medical attention while in the apartment. (Id. at 53-55.) Plaintiff testified that it was well known to the officers and to Plaintiff that he would be able to see a nurse upon being booked into the Forsyth County Detention Center. (Id. at 58-59; Watkins Aff. ¶ 14; George Aff. ¶ 12.) He arrived at the Detention Center between 1:00 and 2:00 in the afternoon, and he saw the nurse "around three." The nurse completed an intake form with various questions, checked Plaintiff's vital signs including oxygen saturation, and prescribed ice packs for his wrists. (Pl. Dep. at 61, 63-4, 66-67 and Ex. 2.) According to Plaintiff's medical records, Plaintiff saw the nurse again two days later, but no issues were noted. He submitted a sick call request regarding his back pain two weeks later, on May 30, 2016. An x-ray was obtained on June 17, 2016, reflecting vertebrae with "normal alignment without fracture," and noting "[s]acrum and joints appear normal without fracture or asymmetry." (Plaintiff's Decl. [Doc. #79] at 38.)

According to Plaintiff, during the course of the arrest, the officers failed to comply with Police Department internal policies by not turning on their body cameras, not taking Plaintiff to a hospital, and not filing an incident report. Plaintiff seeks an award of compensatory and punitive damages.[3]

---

[3] Plaintiff's injuries alleged here appear to be the subject, directly or indirectly, of at least three other lawsuits pending in this Court, Mitchell v. OrthoCarolina Winston, No. 17CV712 (M.D.N.C. 2017), Mitchell v. Forsyth Cty. Sheriff Office, No. 17CV879 (M.D.N.C. 2017), and Mitchell v. Forsyth County, No. 1:18CV574 (M.D.N.C. 2018). The Court notes in particular that the present case involves claims related only to the actions of arresting officers on May 17, 2018, and any issues regarding claims against jail personnel or medical providers

## II. DISCUSSION

### A. Standard

Summary judgment is appropriate when no genuine issue of material fact exists. Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991). A genuine issue of fact exists if the evidence presented could lead a reasonable fact-finder to return a verdict in favor of the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). A court considering a motion for summary judgment must view all facts and draw all reasonable inferences from the evidence before it in a light most favorable to the non-moving party. Id. The proponent of summary judgment "bears the initial burden of pointing to the absence of a genuine issue of material fact." Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)). If the movant carries this burden, then the burden "shifts to the non-moving party to come forward with facts sufficient to create a triable issue of fact." Id. at 718-19 (citing Anderson, 477 U.S. at 247-48). A mere scintilla of evidence supporting the non-moving party's case is insufficient to defeat a motion for summary judgment. See, e.g., Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994); see also Anderson, 477 U.S. at 248 (non-moving party may not rest upon mere allegations or denials.)

### B. Deliberate Indifference

Plaintiff alleges that the decision not to take him to a hospital after he fell from the ceiling violated Police Department protocols for an injured detainee and constituted a violation

---

for failure to provide medical treatment would not be part of the claims considered in the present case.

of his constitutional rights.[4]  Because of his status as a pretrial detainee, Plaintiff's claim of deliberate indifference to his medical needs would be evaluated under the due process clause of the Fourteenth Amendment rather than under the Eight Amendment standard applicable to convicted prisoners.  City of Revere v. Mass. Gen. Hosp., 463 U.S. 239, 244 (1983); see Bell v. Wolfish, 441 U.S. 520, 535 (1979).   In practice however, the standards are the same for both pretrial detainess and convicted persons.  See Brown v. Harris, 240 F. 3d 383, 388-89 (4th Cir. 2001)(holding that a pretrial detainee is entitled to the protections of due process, but concluding that the court need not decide whether the prisoner was convicted or a pretrial detainee because the standard is the same).  Plaintiff must establish that defendants acted with "deliberate indifference" to his "serious medical needs."  Estelle v. Gamble, 429 U.S. 97, 104 (1976); Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008).  The "serious medical needs" component is objective and as is relevant here, is a medical need that is so obvious that even a non-physician would recognize the need for a doctor's attention.  535 F.3d at 241.  On the

---

[4] Plaintiff contends that Defendants' alleged violations of Winston-Salem Police Department Polices or Orders are themselves actionable under § 1983.  For example, Plaintiff contends that "the defendants knew even if the plaintiff['s] injuries was non-fatal they still had a policy to follow which was in effect on May 17, 2016, and they all chose to intentionally and knowingly not follow Winston-Salem Police Department policies assuming they would get away with it."  (Plaintiff's Opposition [Doc. #77] at 9.)   The policy provides that sick or injured arrestees should be offered treatment at the Forsyth Medical Center Emergency Room. (Injuries to Persons and Arrestees [Doc. #68-3] Ex. B.)   Plaintiff also alleges that Defendants violated City policy by not preparing and filing an incident report and by failing to activate body cameras.  (Id. at Ex. A; Plaintiff's Affidavit [Doc. #79] at 95-100.)  However, the Court notes that "[c]onduct violating state law without violating federal law will not give rise to a § 1983 claim."  Snider Int'l. Corp. v. Town of Forest Heights, Md.,739 F.3d 140, 145 (4th Cir. 2014); Clark v. Link, 855 F.2d 156, 163 (4th Cir. 1988) (allegations that defendants conspired to deprive an arrestee of a state law right to be presented to a magistrate without unnecessary delay  failed to state a claim under § 1983); see also Luckert v. Dodge County, 684 F.3d 808, 819 (8th Cir. 2012) ("Failure to follow written procedures does not constitute per se deliberate indifference.  If this were so, such a rule would create an incentive for jails to keep their policies vague, or not formalize policies at all.").  Thus, the alleged violations of City policies would not state a § 1983 claim, and Plaintiff must instead establish a violation of his constitutional rights.

other hand, the "deliberate indifference" standard is judged subjectively, meaning that a plaintiff must show that a defendant knew of and disregarded the risk posed by the serious medical need. Id.; Scinto v. Stansberry, 841 F.3d 219, 225 (4th Cir. 2016). This may occur when non-medical personnel "intentionally deny[ ] or delay[ ] access to medical care." Estelle, 429 U.S. at 104-05.

Plaintiff has not met his burden to establish a constitutional violation. After falling through the ceiling, Plaintiff was able to stand, squat, and walk, and repeatedly tried to physically elude, avoid, or resist arrest by law enforcement officers. Critically, Plaintiff acknowledges that someone observing him would not have concluded that he needed medical attention. Once in the patrol car to be transported to be booked, he did not repeat a request for medical attention, was not screaming in pain, and testified that both he and the officers on the scene were aware that Plaintiff would receive medical attention during the course of being booked into the Forsyth County Detention Center. The Court notes that Plaintiff's visit with the nurse and a subsequent x-ray appears consistent with the observations by the officers that immediate hospitalization was not required. Therefore, summary judgment should be granted to all moving defendants on Plaintiff's claim of deliberate indifference to his medical needs.

C. Excessive Force

Plaintiff also brings a claim for alleged violation of his due process rights to be free from excessive use of force during his arrest. Plaintiff contends that "Defendant B.A. George forced the Plaintiff on the kitchen counter-top by the Plaintiff['s] head and held the Plaintiff['s] head face down on the kitchen counter." (Opposition [Doc. #77] at 11.) Plaintiff also described

this incident as follows: Defendant George "used excessive and unnecessary force on the Plaintiff [who was secured in handcuffs behind his back] by attempting and then slammed the Plaintiff head on the kitchen counter." (Id. at 10) (brackets in original).

A pretrial detainee must show that an officer's use of force was objectively unreasonable. Kingsley v. Hendrickson, ___ U.S. ___,135 S. Ct. 2466, 2470 (2015). A pretrial detainee can prevail "by showing that the [defendants'] actions are not 'rationally related to a legitimate nonpunitive government purpose' or that the actions 'appear excessive in relation to that purpose.'" Kingsley, 135 S. Ct. at 2473 (quoting Bell v. Wolfish, 441 U.S. 520, 561 (1979)). Defendants' actions will be viewed from the perspective of a reasonable officer at the time, "rather than with the 20/20 vision of hindsight." Graham v. Connor, 490 U.S. 386, 396 (1989). In making a determination of whether the force was reasonable, a court may consider:

> the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

Kingsley, 135 S. Ct. at 2473 (citing Graham, 490 U.S. at 396).

In this case, Plaintiff claims injuries to his head and wrists during his arrest, but both injuries are a result of Plaintiff's efforts to resist or avoid arrest. There is no dispute that officers were on the scene to arrest a suspect who had admitted to participating in an armed robbery, that Plaintiff was hiding from the officers when he came crashing through the ceiling, that he ignored verbal commands to get down, that he began heading for an open door, that he appeared to resist officers trying to handcuff him leading to a minor injury to his wrists, and

-10-

that after he was handcuffed he again attempted to avoid arrest by physically escaping from an officer's control and resisting efforts to bring him back under control. The Court accepts Plaintiff's representation that he resisted Officer George as Officer George attempted to capture him and that Officer George slammed Plaintiff's head down on a nearby counter during his efforts to prevent Plaintiff from escaping. Plaintiff had no visible marks, no break in skin, and no subsequent complaints to medical staff regarding his head injury. The nurse who examined him shortly after his arrest noted only a need for ice-packs for Plaintiff's writs. When viewed from the perspective of a reasonable officer under the circumstances, noting the serious nature of the crime charged involving armed robbery, and the undisputed fact that Plaintiff refused to comply with directions from law enforcement officers and physically attempted to escape from their control on more than one occasion to avoid arrest, the Court is satisfied that even under Plaintiff's version of events, officers properly used the necessary force to restrain Plaintiff, a resisting arrestee. The Court also notes that officers made efforts to temper or limit the degree of force used. Officers first drew and then re-holstered their weapons and then drew a taser but did not use it. Force was used as necessary to counter Plaintiff's efforts to resist or avoid arrest. These factors collectively weigh in favor of the reasonableness of the force used even under Plaintiff's version of events, and the Court concludes that Plaintiff has failed to present sufficient facts to support a claim for excessive force under the circumstances. Plaintiff can point to no conduct that reflects a use force unrelated to the nonpunitive purpose of arresting Plaintiff while he was actively resisting

officers and attempting to elude arrest, and no conduct excessive in relation to that purpose.

      D.      Qualified Immunity

Qualified immunity shields government officials from liability for their conduct, provided "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). If the Court determines that the conduct violated plaintiff's constitutional rights, then the Court must determined wether the right was 'clearly established' at the time of the violation. A law is clearly established "when the law has been authoritatively decided by the Supreme Court, the appropriate United States Court of Appeals, or the highest court of the State." Wilson v. Layne, 141 F.3d 111, 114 (4th Cir. 1998)(internal quotation omitted). Based upon the findings above, the Court concludes that there are no material facts in dispute, and that even under Plaintiff's version of events, Defendants' conduct did not result on a violation of Plaintiff's constitutional rights with respect to alleged deliberate indifference to serious medical needs or use of excessive force during Plaintiff's arrest. Even absent such a finding, Defendants' conduct was not clearly proscribed such that they would have understood that their conduct violated Plaintiff's Fourteenth Amendment rights. As discussed, Defendants had no reason to conclude that Plaintiff was in need of immediate medical care, nor was force applied beyond what was reasonable given the objective circumstances presented. Defendants properly believed that Plaintiff's conduct in refusing to comply with lawful orders and taking

action to resist and avoid arrest required them to act and respond with the use of measured force that did not objectively exceed what was required.

For all of these reasons, Plaintiff has failed to present sufficient evidence to support a Fourteenth Amendment claim. However, if the Court were to find a constitutional violation, Defendants would be entitled to qualified immunity.

E.     Official Capacity

To the extent Plaintiff asserts claims against the officers in their official capacities, the City of Winston-Salem is effectively a party. (Order [Doc. #64] at 2.) Because the Court has found no constitutional violations, a suit against the City alleging the same violations must also fail. Altman v. City of High Point, 330 F.3d 194, 207, n. 10 (4th Cir. 2003) ("[A] municipality cannot be held liable in the absence of a constitutional violation by one of its agents.") (citing City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986)). However, even if a constitutional violation by an officer had been found, a municipality may only be held liable under § 1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." Monell v. Dep't of Soc. Servs. of the City of New York, 436 U.S. 658, 694 (1978). "A policy or custom for which a municipality may be held liable can arise in four ways: (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that 'manifests deliberate indifference to the rights of citizens'; or (4) through a practice that is so 'persistent and widespread' as to constitute a 'custom or usage with the force of law.'"

Lytle v. Doyle, 326 F.3d 463, 471 (4th Cir. 2003)(quoting Carter v. Morris, 164 F.3d 215, 217 (4th Cir. 1999)). Such a claim only exists if, "through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a causal link between the municipal action and the deprivation of federal rights." Bd. of the Cty. Comm'rs. of Bryan Cty. v. Brown, 520 U.S. 397, 404 (1971)(emphasis in original)(internal citation omitted).

Plaintiff must identify a municipal policy or custom that caused his injury. Walker v. Prince George's Cty., Md., 575 F.3d 426, 431 (4th Cir. 2009) (citing Bd. of the Cty. Comm'rs of Bryan Cty., 520 U.S. at 403). Plaintiff appears to rely on a general policy that Winston-Salem police officers act in accordance with state and federal law, and such policy would not support a claim under Monell or Walker. Therefore, Plaintiff's official capacity suit under § 1983 should be dismissed.[5]

F.    State law claims

Finally, Plaintiff also brings a state tort claim against Defendant George for assault and battery based upon the facts surrounding his arrest. In Plaintiff's various filings, he also makes reference to claims for "gross negligence" or negligence. Thus, the scope of the claims under state law is not clearly set out. Even more importantly, Defendants assert governmental

---

[5] The Court also notes that no specific allegations are made against Defendant Rountree, the Police Chief during the relevant time period. To the extent the claims are asserted as official capacity claims, those claims fail for the reasons set out above. To the extent the claims are asserted as individual capacity claims, Plaintiff has failed to assert any claims specifically as to Defendant Rountree. Moreover, Plaintiff has failed to assert a constitutional violation by any of the Defendants, for the reasons set out above.

immunity defenses, which in turn raise state law issues regarding waiver of immunity based on the purchase of various insurance policies.

If summary judgment is granted on the § 1983 claims, the Court has discretion whether to exercise supplemental jurisdiction over the remaining state law claims. Because the federal claims would be dismissed prior to trial, and because the scope of the state law claims, the evidence required to support those claims, and the immunity defenses and potential waiver of those defenses would all raise state law issues best addressed by the North Carolina courts, the Court recommends that any remaining state claims be dismissed without prejudice under 28 U.S.C. § 1367(c)(3).

G. Plaintiff's Motion

Plaintiff requests that the Court consider pursuing criminal charges or sanctions [Doc. #92] against Defendants, based on Plaintiff's contention that Defendants made false submissions in support of summary judgment. The Court finds that the Motion lacks both factual and legal support, is frivolous on its face, and will be denied.

III. CONCLUSION

IT IS THEREFORE ORDERED that Plaintiff's Motion for Sanctions [Doc. #92] is denied.

immunity defenses, which in turn raise state law issues regarding waiver of immunity based on the purchase of various insurance policies.

If summary judgment is granted on the § 1983 claims, the Court has discretion whether to exercise supplemental jurisdiction over the remaining state law claims. Because the federal claims would be dismissed prior to trial, and because the scope of the state law claims, the evidence required to support those claims, and the immunity defenses and potential waiver of those defenses would all raise state law issues best addressed by the North Carolina courts, the Court recommends that any remaining state claims be dismissed without prejudice under 28 U.S.C. § 1367(c)(3).

G. Plaintiff's Motion

Plaintiff requests that the Court consider pursuing criminal charges or sanctions [Doc. #92] against Defendants, based on Plaintiff's contention that Defendants made false submissions in support of summary judgment. The Court finds that the Motion lacks both factual and legal support, is frivolous on its face, and will be denied.

III. CONCLUSION

IT IS THEREFORE ORDERED that Plaintiff's Motion for Sanctions [Doc. #92] is denied.

IT IS RECOMMENDED that Defendants' Motion for Summary Judgment [Doc. #67] be granted as to Plaintiff's § 1983 claims, that the Court decline to exercise supplemental jurisdiction over the state law claims, that the state law claims be dismissed without prejudice, and that this action be dismissed.

This, the 30th day of July, 2018.

/s/ Joi Elizabeth Peake
United States Magistrate Judge